VILTER MANUFACTURING COMPANY, Appellant, vs. HUM-
PHREY, imp., Respondent.

*September 3—September 24, 1907.*

*Contempt: Civil or criminal proceeding: Appealable order: Violation*
*of injunction: Peaceful picketing: Punishment.*

1. Where disobedience of an injunctional order by a party to the
   action is both a civil and a criminal contempt, if the proceeding
   to punish it is entitled in the action in which the order was
   made and charges injury to the rights and remedies of the op-
   posing party by reason of the violation, such proceeding is a
   civil proceeding and an appeal lies from a final order therein
   adjudging that the party charged did not violate the injunc-
   tional order and is therefore not guilty of contempt.
2. The appeal from such an order brings before the appellate court
   only the question of fact whether the respondent violated the
   injunctional order, where such injunctional order, even though
   it may have been erroneous, was within the jurisdiction of the
   court making it.
3. Respondent's own testimony in this case, showing that he pick-
   eted the premises of the appellant company with other strikers
   for the purpose of preventing men from going to work for the
   company and with the intention of compelling the company to
   accede to the demands of the union and conduct its business in
   the manner which the union prescribed, is *held* to show that he
   violated an injunctional order expressly commanding him not
   to do those things.
4. A finding of the court below that respondent did not violate the
   injunctional order is construed to mean that the court believed
   that he had committed no overt acts of violence or abuse, but
   had simply done peaceful picketing. That being accepted as
   the fact, and no money loss being shown for which indemnifica-
   tion should be adjudged, a nominal fine only is imposed upon
   respondent, under sec. 3490, Stats. (1898), together with the
   costs and expenses of the proceedings.

APPEAL from an order of the circuit court for Milwaukee
county: JAMES J. DICK, Judge. *Reversed.*

This is an appeal from an order denying a motion to pun-
ish the respondent for contempt of court in violating an in-
junctional order. The action was in equity to enjoin strikers,

and labor unions from interfering with the plaintiff's busi-
ness.   The action was brought against certain unincorporated
lodges of the Iron Moulders' Union, as well as against cer-
tain individuals, including the respondent, alleged to be mem-
bers of such unions.   The plaintiff is a manufacturing cor-
poration located at Milwaukee operating a large iron foundry,
and it charges in its complaint that the defendants con-
spired together to compel the plaintiff to grant certain de-
mands of the union with regard to piece work, the employ-
ment of nonunion men and apprentices, weekly payment of
wages, etc., and that on the plaintiff's refusal to accede to
such demands the defendants who were in the employ of
the plaintiff struck on the 2d day of May, 1906; that after
said strike, in furtherance of such conspiracy, the defend-
ants, by picketing and congregating in large numbers around
plaintiff's shop, by threatening plaintiff's remaining employ-
ees with violence, by persuasion, and by other means, have
carried on the conspiracy to unlawfully compel plaintiff to
grant such demands, to the great injury of plaintiff's busi-
ness; and a perpetual injunction against all acts tending or
intended to compel the plaintiff to operate its plant upon the
terms so demanded was prayed for.

Upon this complaint and certain corroborating affidavits
a temporary injunctional order was obtained from a court
commissioner August 3, 1906, couched in very sweeping
terms, restraining the defendants, among other things, from
interfering in any way with the plaintiff's business or prop-
erty, from compelling, or attempting to compel, by threats,
intimidation, fraud, persuasion, or violence, any of the plaint-
iff's employees from leaving its employ or any other person
from entering its employ, from congregating about the plaint-
iff's shop or picketing or guarding the streets for such pur-
pose, from assaulting employees, or going to their homes to
intimidate or coerce them, from persuading or inducing any

person to join said conspiracy, and "from doing any act tending or intended to compel the plaintiff against its will or the will of its officers to operate its factory or employ or discharge any workmen in any manner or upon any terms prescribed by any association or union, or to refrain against its will or the will of its officers from operating its said factory in any lawful manner."

The issuance of this injunction was known to the respondent *Humphrey.* On the 10th of October, 1906, an order to show cause, based upon affidavits charging violation of the injunction by the respondent, was issued, in which it was recited that it appeared "that such violation and misconduct were calculated to and actually did defeat, impede, and prejudice the rights and remedies of the plaintiff," and respondent was required to show cause why he should not be punished for such alleged misconduct and violation of the order. The affidavits on which the order was based charged the respondent with continuous picketing of the plaintiff's premises since the service of the injunctional order upon him, also with several specific acts of verbal abuse of the plaintiff's employees while on picket duty. Said affidavits further set forth other acts of abuse and violence on the part of the strikers, and alleged generally that the respondent and the other strikers committed such acts in furtherance of said conspiracy and for the purpose of intimidating and driving out of employment the plaintiff's employees, and thereby caused a reign of fear and terror to exist among such employees, to the great damage of the plaintiff's business.

Upon the hearing of the order to show cause considerable oral testimony was taken, and upon the conclusion of the trial the court made an order denying the motion, on the ground the respondent had "not committed any act in violation of the said temporary injunction, and that he is not in contempt for any violation of said order."

For the appellant there were briefs by *Turner, Hunter &*

*Goff,* attorneys, and *W. J. Turner,* of counsel, and oral argument by *W. J. Turner.*

For the respondent there was a brief by *Rubin & Zabel,* attorneys, and *W. B. Rubin,* of counsel, and oral argument by *Mr. Rubin.*

WINSLOW, J. It is very plain by the terms of the order to show cause that this is a proceeding seeking to punish a party to an action, under subd. 3, sec. 3477, Stats. (1898), for disobedience of a lawful order of the court. Such a proceeding is brought for the primary purpose of protecting the rights of the opposite party, and is a civil proceeding. Where it is desired to punish an act as a criminal contempt, the proceeding should be brought in the name of the state, under sec. 2565 *et seq.,* Stats. (1898). This was clearly pointed out in *Emerson v. Huss,* 127 Wis. 215, 106 N. W. 518. The latter proceeding is primarily for the purpose of vindicating the dignity of the court and enforcing respect for its authority. There are doubtless some acts which are civil as well as criminal contempts. The wilful disobedience of an order of the court by a party to the action would seem to be such an act if the rights or remedies of the opposing party are injured or prejudiced thereby. See subd. 3, sec. 2565, and subd. 3, sec. 3477, Stats. (1898). In such case the form in which the proceeding is brought will necessarily determine its character. If the proceeding is brought and prosecuted in the name of the state, it should be held to be a criminal proceeding, under sec. 2565, *supra.* If, however, as in the present case, it be entitled in the civil action in which the alleged violated order was made and charges injury to the rights or remedies of the opposing party by reason of the violation, it is plainly a civil proceeding, under sec. 3477, *supra,* brought primarily in the interest of the aggrieved party. The proceeding before us was therefore a civil proceeding, and hence an appeal lies from the final order.

The appeal, however, brings before us only the question of fact, namely, whether it was proven that the respondent violated the injunctional order.   We are not concerned with the much-debated question whether there may lawfully be peaceful picketing to carry out the purposes of a strike.   The injunctional order in question was very broad and sweeping in its terms, and not only prohibited all picketing which should intimidate or obstruct plaintiff's employees, but also prohibited the doing of any act tending or intended to compel the plaintiff to operate its factory or employ or discharge workmen in the manner or upon the terms demanded by the union.   The order in question may have been too broad, but it was within the jurisdiction of the commissioner, and if erroneous the remedy was by motion to modify its terms, not by disregarding them.   The orders of a court having jurisdiction must be obeyed.   If they can with impunity be disregarded they should never be made.   A court which makes such orders can give no good reason for its existence. It should be abolished.   It is not a court in any true sense of the term.

The question whether the respondent disobeyed this sweeping injunctional order is not open to doubt under the respondent's own evidence.   It is true that he denies that he at any time interfered with plaintiff's employees, or called them names, or endeavored to dissuade them from working for the plaintiff or to coerce them; but he admits that he continuously picketed the plaintiff's premises with other strikers from the time of the making of the injunctional order until the commencement of the contempt proceedings, and that this was done in pursuance of the strike, in furtherance of its purposes, and under the direction of the strike leaders.   He further testified as follows:

"A strike is carried on by me and those associated with me to compel the employers to take us and those associated with us back on the terms proposed by our committee, and

that is what I have been working for right along, and every act I have done has been for that purpose. I understand every act done by the other members of the union and the strikers is done for that purpose. *Q.* And you understand, do you not, that if you and those associated with you can prevent handy men and your union from going to work in the foundry you win the strike, don't you? *A.* Yes, sir; that is what all of us were trying to do. All of us were engaged in that, and whatever any of us did, as far as I know, was done toward the accomplishment of that end."

Here is a distinct and unmistakable admission that the picketing which he did was intended to compel the plaintiff to accede to the demands of the union and conduct its business in the manner which the union prescribed. This was precisely what the injunctional order commanded him not to do, in practically so many words. Whether the order was not too sweeping in its terms we do not decide. The question is not before us. While it stood it was respondent's duty to obey it. If he thought it too broad he should have moved to modify it.

The fact of the respondent's violation of the injunctional order being undisputedly shown by his own evidence, it is evident that the court's finding that he had not violated the order is erroneous. We construe this finding to mean that the court believed the respondent's testimony to the effect that he had committed no act of violence or abuse, but had simply done peaceful picketing. We are unable to say that this conclusion is against the clear preponderance of the evidence, and hence we accept it as a fact. No actual money loss was shown as the result of the respondent's acts. Hence no indemnification should have been adjudged, but simply a fine under sec. 3490, Stats. (1898). In view of the conclusion of the trial court as to overt acts of violence or abuse we think the fine should not be large, but should be fixed at what may be called practically a nominal sum, *i. e.* $10, together with the costs and expenses of the proceedings.

*By the Court.*—Order reversed, and proceeding remanded with directions to enter an order adjudging the defendant guilty of contempt and imposing a fine in accordance with the statute and as in this opinion indicated.