Thomas G. MALNAR, D.D.S. and Karen
F. Malnar, Husband and
Wife, Appellees,

v.

Gerald B. WHITFIELD,
D.D.S., Appellant.

No. 67835, 68812.

Court of Appeals of Oklahoma,
Division No. I.

May 16, 1989.

As Corrected July 11, 1989.

Robert G. Green, Tulsa, for appellant.

P. Thomas Thornbrugh, Mike Barkley, Richard W. Gable and John Clayman, Tulsa, for appellees.

## MEMORANDUM OPINION

MacGUIGAN, Judge:

In August of 1979 Appellees negotiated a first real estate mortgage for the construction of certain improvements on real property owned by them in Owasso, Oklahoma. Appellees entered into a contract for the construction of an office building. During the construction of the improvements on Appellees' property, the Appellant purchased the lot adjoining Appellees' lot. Following construction of the building on Appellees' property and prior to commencement of construction, Appellant discovered that a portion of the building and a driveway leading to it had been inadvertently constructed on Appellant's lot. Attempts were made at settlement and after the failure of same, Appellant caused Appellees' driveway to be chained, locked, and thereafter partially destroyed through the use of a bulldozer. Appellees brought suit for damages, for a temporary restraining order, and for a permanent injunction against Appellant. Appellant filed an answer and cross-petition for mandatory injunction requiring removal of the Appellees' building from Appellant's land and for various consequential damages. The district court denied Appellant's cross-petition for a mandatory injunction and Appellant appealed to the Supreme Court in Case No. 57,616. The Supreme Court reversed and remanded the case for further proceedings requiring presentation of evidence by Appellees as the party resisting the injunction, 708 P.2d 1093 (1985). After such presentation, the trial court denied Appellant's request for a mandatory injunction and found Appellant to have acted in bad faith and without clean hands. The trial court granted Appellees an easement for that portion of Appellant's property upon which Appellees' structure is situated, for the life of the structure; an easement around the structure for the purpose of maintenance; and an easement for the right of receiving air and light. Judgment was granted in favor of Appellant in the sum of $3,180.00 which represented damages to Appellant for the easements awarded. Appellant appealed the trial court's decision denying the mandatory injunction in Case No. 67,835.

After the district court had denied Appellant's application for mandatory injunction and granted Appellees' equitable relief enjoining and restraining Appellant from interfering with Appellees' right to the quiet use and enjoyment of their building, Appellant constructed a tall structure which Appellees complained interfered with their right of quiet use and enjoyment of their building. Appellees made an application for citation for indirect contempt. Upon jury trial, Appellant was found to be in indirect contempt of court. The trial judge, pursuant to 12 O.S.1981 § 1390, required Appellant to make restitution to Appellees in the sum of $4,105.50. He further ordered Appellant to post a $5,000.00 cash bond as and for additional security to insure that Appellant would obey the injunction entered by the trial court in November of 1986. Appellant also appealed this judgment in Case No. 68,812. Case No. 68,812 and Case No. 67,835 have been consolidated for purposes of appeal. We will, however, treat and discuss each case separately.

## Case No. 67,835—THE MANDATORY INJUNCTION CASE

This case involves three issues:

(1) Whether the trial court properly determined that Art. II, § 23 of the Oklahoma Constitution does not preclude an award of damages to an injured property owner;

(2) Whether the trial court erred in denying Appellant's request for a mandatory injunction based upon principles of equity;

(3) Whether the trial court properly granted Appellees' easement upon land owned by Appellant.

## I.

 The trial court awarded monetary damages to Appellant as a means of compensating Appellant for the injury resulting from the encroachment of Appellees' building. Appellant contends that the trial court had no authority for fashioning such a remedy in equity. Art. II, § 23 of the Oklahoma Constitution provides:

> No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining or sanitary purposes, in such manner as may be prescribed by law.

Appellant argues that § 23 divests an equity court of the power to refuse a mandatory injunction and that § 23 imposes absolute liability upon all forms of trespass, regardless of the circumstances. We hold that Art. II, § 23 of the Oklahoma Constitution merely limits the delegation of eminent domain power by the State to another individual or entity. See 27 O.S.1981 § 6; *Smith v. Bovaird Supply Co.*, 616 P.2d 1157 (Okl.1980). Section 23 does not allow the equitable remedy of a mandatory injunction to accomplish an inequitable purpose. See *Arnold v. Melani, dissenting opinion*, 450 P.2d 815 (Wash.1969). Art. II, § 23 of the Oklahoma Constitution does not divest Oklahoma courts of the power to remedy an encroachment by way of an award of damages to the injured property owner. *British American Oil Producing Co. v. McClain*, 191 Okl. 40, 126 P.2d 530 (1942); *Larkins–Warr Trust v. Watchorn Petroleum Co.*, 198 Okl. 12, 174 P.2d 589 (1946). Therefore, injunction as a relief would be proper only when the available remedy at law is inadequate. The trial court properly balanced the relative hardships of the parties and decided that the legal remedy of damages was available to Appellant as a means of compensation.

## II.

 Appellant contends that the trial court erred in denying Appellant's request for a mandatory injunction based upon principles of equity.

The Supreme Court in its ruling to remand this case to the trial court in *Malnar v. Whitfield*, 708 P.2d 1093, 1096 (Okl. 1985), stated:

> The other factors which must be considered are the cost of removal, the value of the benefit of removal to be gained by the party requesting the injunction, and the availability of compensation by way of money damages.

Testimony during the course of the trial established that to remove that portion of the encroaching structure and reconstruct that space at another part of the structure would cost between $45,000.00 and $60,000.00. The property was appraised at $140,000.00 at the time of the original trial and, therefore, the cost of removal is a significant part of the value of the building. Testimony reflects that Appellant constructed his building after learning of the encroaching structure, and there is some evidence that Appellant even adjusted his architectural plans to relocate his structure in such a manner as to limit the use of Appellees' structure. There is also testimony that even if the encroaching structure of Appellees was removed, because of the position that Appellant placed his building on the lot, it would be of little or no value to Appellant's structure to remove the Appellees' building. Testimony also reflected that the value of Appellant's lot prior to construction was $35,000.00 and an appraiser determined that the loss in value to Appellant's lot because of the encroaching structure reduced Appellant's fair market value by $3,180.00. Appellant therefore could be compensated by the payment of $3,180.00 whereas it would cost Appellees between $45,000.00 and $60,000.00 to remove their structure. Thus, the trial court determined that granting damages to Appellant was the most equitable method of compensating the parties. The Supreme Court in the original *Malnar v. Whitfield* decision at 1096 stated:

[O]nce all of those competing equities are laid before the Court, the ultimate determination is largely a matter of an exercise of the discretion of the trial court. We hold after examining the evidence that the judgment given by the trial court was not against the clear weight of the evidence. *Carpenter v. Carpenter*, 645 P.2d 476 (Okl.1982).

We also affirm the trial court's decision that the mandatory injunction should be denied by reason of Appellant's own conduct as constituting "unclean hands" as the findings of the trial court are not against the clear weight of the evidence. *Story v. Hefner*, 540 P.2d 562 (Okl.1975).

### III.

■■■ Appellant asserts that the trial court's denial of the mandatory injunction and the consequent award of monetary damages and easements was an error of law. Appellees contend that the trial court sitting in equity has broad powers to fashion remedies suitable for the particular facts and circumstances of the case. The equitable jurisdiction of a trial court is not dependent upon specific statutory authorization. *Marley v. Cannon*, 618 P.2d 401 (Okl.1980). An equity court is not bound by the rigid rules of common law but may adapt its relief and mold its decisions to satisfy the requirements of the case to protect and conserve the entities of the parties. 27 Am.Jur.2nd Equity § 103 (1966). This was a specific factor recognized by the Supreme Court in the appeal of the original case and remand of this matter. *Malnar v. Whitfield*, 708 P.2d at 1096. The trial court recognized that unless it gave judicial relief to the encroachment of Appellees' structure, Appellee could not have the beneficial enjoyment and use of his building. The evidence further reflected that Appellant had acted oppressively and maliciously to Appellees. Consequently, as a court of equity the trial court fashioned a remedy to meet the extremely unique facts and circumstances of this case. Appellant contends that *Fairlawn Cemetary Association v. First Presbyterian Church*, 496 P.2d 1185 (Okl.1972) prohibits the trial court from granting easements and damages. However, we find the pronouncement in *Fairlawn* distinguishable from the present case as *Fairlawn* did not state that a court cannot award easements and damages. In *Fairlawn*, defendant's encroachment transpired long after the plaintiff constructed a fence and, furthermore, the encroachment created an immediate threat to plaintiff's property. We find that the principal of equity that one who seeks equity must do equity and come into court with clean hands. *Story v. Hefner, supra*, 540 P.2d at 567. In the present case the record reflects that Appellant acted in an oppressive and malicious manner. The trial court was therefore correct to grant to Appellees a limited use to maintain their present utilization of their building.

Therefore, for the above-stated reasons, in Case No. 67,835, the trial court's refusal to grant a mandatory injunction; its decision to compensate Appellant by suitable monetary damages and its granting to Appellees the right of continued use and enjoyment of their property was correct.

### Case No. 68,812—THE INDIRECT CONTEMPT PROCEEDING

Appellant alleges that the trial court erred in admitting into evidence certain previous findings (Exhibit No. 6) prejudicial to Appellant. The trial court in the original action having denied Appellant's mandatory injunction awarded a permanent easement to Appellees where Appellees' building was actually located, plus approximately six feet of maintenance easement on its periphery. In making the award, the trial court entered certain findings of fact in part as follows:

19. The defendant, Gerald B. Whitfield, following discovery of the Malnor encroachment, engaged in misconduct toward plaintiffs which was oppressive, unfair, malicious and unjust and which conduct was calculated to harass and harm the plaintiffs.

20. Defendant, Gerald B. Whitfield did not act in good faith and imposed an

undue burden on the plaintiffs in regard to the subject matter of this action.

The trial judge, over the objection of Appellant, permitted these findings to be introduced to the jury as plaintiffs' Exhibit No. 6. It is the Appellant's position that the jury needed only to have the order which formed the basis of the contempt. Following the introduction of plaintiffs' Exhibit No. 6, Appellant was permitted to testify that the findings of fact had been appealed from. Also, the trial court issued a cautionary instruction from the bench which included the admonition to the jury that the findings of fact and the appeal from the findings of fact were relevant only to the jury's consideration of how much "weight or credit, you, the jury, want to place on testimony and other evidence, purpose or motive for having built the box or allegedly built the box which is an issue in this lawsuit." Appellant was allowed also in closing argument to the jury to argue that the journal entry of judgment and the findings of fact were on appeal to the Oklahoma Supreme Court and that the defendant disagreed with said judgment and findings. Also, the written instructions made to the jury contain no specific reference to the findings of fact.

Further, Appellant's own defense to the allegation of contempt brought into play the right of Appellees to offer proof of Appellant's past conduct as a rebuttal to Appellant's assertions that he was not in "wilful" violation of the order of the mandatory injunction. See 12 O.S.1981 § 2404(B).

 We hold that if the introduction of Exhibit No. 6 did constitute error, as an impermissible comment by the trial judge on the weight of the evidence, such error was cured when the trial judge specifically cautioned and instructed the jury concerning the submission of Exhibit No. 6. Such error, if any, was cured also when the trial court gave Instruction No. 9 as follows:

Instruction No. 9. The court has made rulings upon questions of law arising in the comments of the trial of this case. In so doing, the court has not expressed nor intimated in any way the weight or credit to be given any evidence or testimony admitted during the trial nor indicated in any way the conclusion to be reached by you in this case. You are the sole judges of the evidence, the weight of the evidence and the credibility of the witnesses.

The Supreme Court in *Bates v. Utech*, 441 P.2d 952 (Okl.1967) rejected the plaintiffs' allegation of error noting that the trial judge instructed the jury that, "any rulings made by the trial court in the admission of evidence did not express or intimate in any way the weight or credit to be given any evidence or testimony admitted the trial period." We hold that the introduction of Exhibit No. 6 was not prejudicial to Appellant nor resulted in a miscarriage of justice. *Davon Drilling Co. v. Ginder*, 467 P.2d 470 (Okl.1970); *Peters v. Golden Oil Co.*, 600 P.2d 330 (Okl.1979).

## IV.

 Next, Appellant asserts that the trial court's Instruction No. 5 constituted reversible error because it failed to instruct the jury that the order of the November 7, 1986 (order forming the basis of Appellees' citation for indirect contempt) was on appeal. Appellant argued that the court should be required to submit into evidence the petition-in-error filed by Appellant in Case No. 67,835 because the "judgment in this case is not final." Appellant's counsel argued that the journal entry of judgment entered November 7, 1987 "is at this point basically a temporary order to be abided by the parties, and that—but there is no final vesting since the case is on appeal." Appellant's objection that the order of November 7, 1986 was only "temporarily binding" on the parties and that Appellant had "taken an appeal from the judgment" was overruled by the trial judge stating:

The court: Your objection will be overruled on the following grounds: to say that it "temporarily binds" versus, "it binds", is a semantical difference. It has no difference. To inject that there is an appeal pending, which allows the jury or invites them to speculate about the outcome of an appeal, would certainly be error that should not be entertained by this court.

Thereafter, the court gave Instruction No. 5 which provided:

> You are further instructed that the journal entry of judgment entered by the court on November 7, 1986, and marked as the plaintiffs' Exhibit #1 is a binding court order, which controls the actions of the defendant, and was in full force and effect at all relevant times on and after November 7, 1986, including the alleged date or dates of the contemptuous activity by the defendant.

We note that Appellant was allowed, over Appellees' objection, to present testimony to the jury that the order entered by the court that he was accused of violating had been appealed by Appellant. Also, as we stated previously, the court gave a cautionary instruction concerning the findings of fact and judgment of November 7, 1986 and what weight should be given that evidence. Appellant's counsel, also in closing argument, was allowed to state his position concerning the pending appeal of the November 7, 1986 order.

21 O.S.1981 § 565 provides in part:

> "[I]ndirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by a court."

Where a court has jurisdiction, the fact that an order may be erroneous, and improvidently granted or irregularly obtained is no excuse for failing to abide by said order. Mere errors in the proceeding in which an order of injunction was granted or irregularities in the form of the injunction order do not constitute justification for disobeying the order of injunction. *Ex parte Thompson*, 94 Okl.Cr. 344, 235 P.2d 955 (1951); *Brown v. State*, 89 Okl.Cr. 443, 209 P.2d 715 (Okl.1949); *Whillock v. Whillock*, 550 P.2d 558 (Okl.1976).

Lastly, we would point out that Appellant in his proposition of error concerning Instruction No. 5 fails to cite any authority in support of his proposition. We will not search the record for Appellant. Since his assignment of error is not supported by citation or authority such proposition should be treated as waived. *Peters v. Golden Oil Co.*, 600 P.2d at 330. For the above-stated reasons we therefore hold that the failure of Instruction No. 5 to include the fact that the November 7, 1986 judgment was under appeal was not error by the trial court.

## V.

Finally, Appellant contends that the trial judge erred when he failed to incarcerate or fine Appellant but instead assessed dmaages of $4,905.50 in favor of Appellees. An indirect contempt of court consists of wilful disobedience of any process or order lawfully issued or made by a court. 21 O.S.1981 § 565. A violation of an injunction or restraining order issued, either for the protection of or enforcement of a private right, constitutes an indirect contempt of court. *Seifried v. State ex rel. Bash*, 184 Okl. 299, 86 P.2d 1008 (Okl.1939). Twelve O.S.1981 § 1390 provides in part:

> An injunction granted by a judge may be enforced as the act of the court. Disobedience of any injunction may be punished as a contempt ... an attachment may be issued by the court or judge, upon being satisfied by affidavit, of the breach of the injunction against the party guilty of the same, who may be required to make immediate restitution to the party injured, and give further security to obey the injunction ...

*Ex parte Hibler*, 139 Okl. 157, 281 P. 144 (1929) and *Fagin v. Thoroughman*, 190 Okl. 649, 126 P.2d 982 (1942) provide that the trial court could not order imprisonment and a fine under 21 O.S.1981 § 566 but must proceed under 12 O.S.1981 § 1390. The court's power to imprison under § 1390 could only occur if and when the contemptor failed to pay the fine or make immediate restitution. See *Allied Materials Corporation v. Superior Products Company, Inc.*, 620 F.2d 224 (10th Cir.1980); *Folk v. Wallace Business Forms, Inc.*, 394 F.2d 240 (4th Cir.1968).

AFFIRMED.

HUNTER, P.J., and HANSEN, J. concur.